**GUTIERREZ v. CUELLAR et al.  (No. 6656.)**

(Court of Civil Appeals of Texas. San Antonio. Jan. 4, 1922.)

**1. Judgment ⚖➡17(9)—Process ⚖➡2—Statute as to essentials of citation mandatory.**

Rev. St. arts. 1852, 2180, prescribing the essentials of a citation, are mandatory, to be strictly construed, and, unless substantially complied with, citation will not support a judgment by default.

**2. Process ⚖➡26—Citation held to sufficiently state time of holding court.**

Citation sufficiently states the time of holding court, as required by Rev. St. art. 1852, by statement: "On the fourth Monday after the first Monday in February, 1919."

**3. Process ⚖➡24—File number of suit must appear in body of citation.**

To satisfy Rev. St. art. 1852, providing that citation shall state the file number of the suit, such number must appear in the body of the citation; it is not enough to indorse it on the back thereof.

**4. Judgment ⚖➡17(10) — To support default judgment citation must state date of filing petition.**

Inclusion in citation of date of filing petition, as required by Rev. St. art. 1852, is necessary to support default judgment.

**5. Process ⚖➡24—Citation held to satisfy statute as to noting date of issuance.**

Citation which has indorsed on the back thereof, over the clerk's signature, the date of its issuance, and also gives it in the body thereof, is in compliance with Rev. St. arts. 1852, 2180, as to noting such date thereon.

**6. Appearance ⚖➡8(1)—Mere attendance on court not appearance.**

Mere attendance on court is not appearance, having effect of service of citation, within Rev. St. art. 1881.

**7. Judgment ⚖➡17(1)—Mere knowledge of filing of suit and attendance on court does not give jurisdiction supporting default judgment.**

Under Rev. St. art. 1885, inhibiting rendering of judgment against a defendant unless on service, or acceptance, or waiver of process, or on an appearance by defendant, as prescribed in this chapter, and article 1880, requiring acceptance or waiver of service to be in writing, and article 1881, giving the essentials of appearance, defendants' mere knowledge of filing of suit, and attendance on court, did not give jurisdiction of them, so as to support a default judgment.

**8. Judgment ⚖➡490(2) — Defects in process render judgment voidable only.**

Defects in process do not render a judgment void, but only voidable.

**9. Judgment ⚖➡407(1)—Under circumstances, direct suit to set aside default judgment maintainable.**

Defendants not having learned of default judgment against them till after the term, and so too late for motion for new trial, and though in time for writ of error, on which defects in the process appearing on the face of the record would have been available, their principal objection to the judgment being failure of service of process on them, a vice not only not apparent on the face of the record, but directly negatived thereby, and so not available by direct appeal or writ of error, they could maintain direct suit to set aside the judgment.

**10. Judgment ⚖➡447(2)—In suit to set aside, inconsistent titles may be set up.**

To show meritorious defense to suit, default judgment in which is sought to be set aside by direct suit, inconsistent titles to the land involved may be set up.

**11. Pleading ⚖➡36(2) — Duress waived by prayer for specific performance.**

Plaintiffs in direct suit to set aside a judgment against them, alleging as part of their meritorious defense to the original suit for

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

land that, under duress, they executed a contract with defendant whereby they leased 'the land of him, by offering to perform, and seeking to require defendant to specifically perform, waive their complaint of duress, affirm the contract, and are bound by it for whatever it is worth to defendant.

**12. Homestead ⊚⟶118(5)—Interest in homestead not divested by husband alone taking lease.**

For purpose of divesting a husband and wife of any interest in premises, which were at the time their homestead, an instrument signed by him, but not by her, in effect recognizing a third person as landlord, and making them his tenants, is void.

**13. Adverse possession ⊚⟶109—Title once acquired by limitation not affected by subsequent lease.**

Where title by limitation had already fully accrued, the taking of a lease by the occupants would not have the effect of destroying or impairing such title, as being a recognition of title of former owner.

**14. Homestead ⊚⟶212—Wife properly allowed to intervene in suit to set aside judgment against her husband for homestead.**

One who, at time of default judgment against defendants in trespass to try title, was wife of one of them, and alleges that the premises constituted the homestead of herself and husband, is properly allowed to intervene in a suit to enjoin execution of a writ of possession, and to set aside the judgment; her rights being jeopardized by the threatened writ, and clouded by the judgment.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Lucio Cuellar and another against Antonia Garcia Vda. de Gutierrez, with Juana Garcia de Cuellar intervening. From an adverse judgment, defendant appeals. Affirmed.

John A. Pope and Raymond & Pope, all of Laredo, for appellant.

Threadagill & Threadgill, of Laredo, for appellees.

SMITH, J. This case involves title and possession of 2¼ acres of land in Zapata county, together with some rock buildings located thereon, of the value of $500. It appears from the pleadings that title to the land embracing this tract was obtained by appellees' ancestors through a grant from the King of Spain more than a century ago, and that at the time of the grant the family constructed the buildings and have continuously made their home therein from generation to generation up to this time. The primary purpose of this suit was to restrain the execution of a writ of possession ousting appellees from the premises.

In December, 1918, Nestor Gutierrez brought an action in the district court of Zapata county, in trespass to try title,

against Lucio Cuellar and Juan Cuellar Ochoa, two of the appellees here, to recover the title to the land involved. Juana Garcia de Cuellar, the remaining appellee, although the wife of Lucio, was not impleaded in that suit.

In March, 1920, Antonia Vda. de Gutierrez, wife of Nestor Gutierrez, the original plaintiff, who had died since the filing of the suit, was substituted as plaintiff, and on the same day judgment by default was rendered in her favor against Cuellar and Ochoa for title and possession of the land. In this judgment it was recited that proper service had been had upon the defendants.

On July 20, 1920, the defendants in said cause No. 118 brought this action against Mrs. Gutierrez and the sheriff of Zapata county to enjoin the threatened execution of a writ of possession issued out of that cause, and to set aside the judgment therein rendered. Juan Garcia de Cuellar, wife of Lucio Cuellar, intervened, adopting as her own the allegations in the plaintiffs' petition, and claiming the premises involved as the homestead of her husband and herself. In answer to these pleadings the defendant below was content to rest her case on general and special demurrers, and without general or other denial of the facts alleged in the pleadings of plaintiffs and interveners. The trial court overruled all these demurrers, and rendered judgment for the plaintiffs, setting aside the judgment rendered in cause No. 118, and perpetuating the injunction. So, if their pleadings stated any cause of action, the plaintiffs and interveners were entitled to recover, as they did. These pleadings, with the exhibits attached to them, cover about 40 pages in the transcript, rendering it impossible, of course, to here set out in detail the facts pleaded. The appeal presents two main questions: First, whether or not the judgment in cause No. 118 was void or voidable; and, second, whether or not a meritorious defense to the original suit was shown. These questions will be discussed in the order mentioned.

Appellees, as plaintiffs below, sought to set aside the judgment rendered against them in cause No. 118 on the grounds: (a) That service of citation upon them as defendants in that cause was void; (b) that the citation purported to have been served upon said defendants was fatally defective, in that it did not state in the body thereof the number of the cause or the date of the filing of plaintiff's petition in that cause, or the date upon which the defendants were required to appear and answer thereto, or the date on which the citation was issued; (c) that defendants were illiterate and unlearned men, ignorant of the laws, and inexperienced in court procedure, and therefore did not know they were required by law to file any answers in the cause in order to present their

defenses, but nevertheless, as a matter of fact, they attended in person the term of court to which the cause was returnable and remained present in said court throughout that and the two succeeding terms, in "readiness to present their defenses" in event the case was called; that neither the original or substituted plaintiff, in person, nor their attorney or any one representing them, attended either of said terms, nor did they visit the courthouse, or even the county seat at any time during either of said terms of court; that at the third term of court following the filing of the suit, in the presence, but without the knowledge, of defendants, and in the absence of the plaintiff or any of her representatives, the trial court of his own motion substituted the name of the original plaintiff, then deceased, with the name of the latter's widow, and, without hearing any evidence, rendered judgment for the substituted plaintiff against the defendants; that defendants did not learn of the rendition of this judgment until some four months later, and long after the court had adjourned for the term, and could not then with due diligence prepare to take the case up on writ of error within the time allowed by law for that purpose.

[1, 2] It is well settled that the provisions of article 1852, R. S., prescribing the essentials of a citation, are mandatory and must be strictly construed, and that, unless the citation be in substantial compliance with these statutory requirements, it will not support a judgment by default. Pruitt v. State, 92 Tex. 434, 49 S. W. 366. Articles 1852 and 2180, which must be construed together, provide (article 1852) that the citation shall state the time of holding the term of court to which it is returnable, the date of the filing of plaintiff's petition, and the file number of the suit, and (article 2180) that the date of issuance of the citation "shall be noted on the same."

· The citations purported to have been served upon the defendants in cause No. 118 directed the sheriff to command defendants to appear at the next regular term of the district court of Zapata county "on the fourth Monday after the first Monday in February, 1919, the same being the ———— day of ———— 19—." This was a sufficient compliance with the requirement that the citation shall state the time of holding court. Ry. Co. v. Wheat, 68 Tex. 133, 3 S. W. 455; Cave v. Houston, 65 Tex. 619.

[3] The file number of the suit was omitted from the body of the citation, but was correctly shown in an indorsement over the clerk's signature on the back thereof. This was not a compliance with the statutory requirement that the citation "shall state * * * the file number of the suit." In order to meet that requirement the file number of the suit must appear in the body of the citation, and its indorsement on the back

thereof will not suffice. Duke v. Spiller, 51 Tex. Civ. App. 237, 111 S. W. 787; Crenshaw v. Hempel, 60 Tex. Civ. App. 385, 130 S. W. 731.

[4] The same strict construction of the statute requires a holding that the omission from the citation of the date of filing of plaintiff's petition renders the citation insufficient to support a judgment by default. Leavitt v. Brazelton, 28 Tex. Civ. App. 3, 66 S. W. 465; Dunn v. Hughes, 36 S. W. 1084.

[5] The date of the issuance of the citation was indorsed on the back of that instrument, over the signature of the clerk, as well as in the body thereof, and was in compliance with the statute, and is not subject to the objections appellant has raised here.

[6, 7] A much more difficult question is presented, however, with reference to the failure of service of citation upon the defendants in cause No. 118. As to one of the defendants, no service was attempted, while as to the other the only service attempted was by the plaintiff himself, who simply gave that defendant a copy of the citation. As to each defendant, this service was clearly void. The question, then, is whether or not defendants by their conduct waived service and made their appearance. The defendants allege facts showing their prompt and persistent attendance upon the first three terms of court following the filing of the suit. They filed no answer, executed no acceptance or written waiver, and made no sort of formal appearance in the case. They simply attended the sessions of the court, with actual knowledge of the filing of the suit against them, and allege a "readiness" on these occasions "to make their defenses." As a practical matter, it may be said that all the purposes of issuance and service of citation were accomplished as to both defendants. They knew the suit had been filed, knew in what court it was pending, and knew when and where that court would convene, and must have known the nature and purpose of the suit, since they were on hand at each of the first three terms of court, actually present in the courtroom, from the time it convened to the time it adjourned for the term, and were "ready with their defenses." But it is provided by statute (article 1885) that—

"No judgment shall, in any case, be rendered against any defendant unless upon service, or acceptance, or waiver of process, or upon an appearance by the defendant, as prescribed in this chapter, except where otherwise expressly provided by law."

There was no service as has been seen; no answer was filed; there was no acceptance or waiver of service, which must be in writing, as provided in article 1880, nor was there any appearance by defendants in accordance with article 1881, which provides that—

"The defendant may, in person, or by attorney, or by his duly authorized agent, enter an appearance in open court, and such appearance shall be noted by the judge upon his docket and entered in the minutes, and shall have the same force and effect as if citation had been duly issued and served as provided by law."

On the contrary, it was recited in the judgment in that case that the defendants, naming them, "came not, either in person or by attorney, but wholly made default." These provisions have been in our statutes since 1846. They very clearly prescribe definite methods of bringing a defendant into court for the purpose of precluding him. He must be served in the prescribed way or file his answer, or must in prescribed ways waive or accept service, or else enter his appearance in the prescribed way. No other means of hailing him into court is provided by statute, and the courts have not provided, and have no power to provide, any other means. These provisions are, and have always been, strictly construed, and ought to be. They must be strictly complied with in order to subject a defendant to the jurisdiction of the courts, and bind him by judgments therein, and, in deference to this wise rule, we hold that, under the facts disclosed in the pleadings, the district court of Zapata county had no such jurisdiction over the persons of the defendants in cause No. 118 as to warrant any judgment against them. Ry. Co. v. Rawlins, 80 Tex. 581, 16 S. W. 430. Although the purposes of the statutes may have been accomplished as a practical matter, and the application thereof apparently technical here, still the language of the law is unmistakable, and leaves no room for construction. To hold that the conduct of appellees was sufficient to subject them to the jurisdiction of the court, and to preclude them by the judgment of that court, would be to dispense by judicial construction with the plain provisions of the statute, and to repeal the articles cited. Given the authority, we would not be disposed to so hold, because such holding would open up avenues of fraud which should remain forever closed, as they are now.

[8, 9] The defects in the process did not render the judgment void; it was voidable only. If the defendants in the judgment had learned of its rendition in time to have filed a motion for new trial in due course, it was their duty to do so; failing in which they would thus have waived the defects, and lost their right to complain because of them. But, it is alleged, the defendants had no notice of the judgment until after the court adjourned for the term; they were thus cut off from a new trial and their right to complain survived.

When the defendants learned of the voidable judgment against them, it was too late to perfect appeal, but the right to a writ of error was still available to them, and was so for some six or eight weeks. They seek to excuse themselves from pursuing that remedy by setting out facts designed to show they had no opportunity to procure counsel and prepare and file application for writ of error within the time allowed them by law, but these facts are insufficient for that purpose, and are conclusively shown to be so by the filing of this suit, setting up the very defects in the process complained of, prior to the expiration of the period within which they could have filed their application for writ of error. The vices in the process upon which the objectionable judgment was obtained are made to appear in the face of the record, requiring no evidence aliunde to disclose them, and, this being true, the questions raised could have been fully determined upon writ of error, and appellees, as defendants in the offending judgment, would have been restricted to that remedy had their grounds of complaint been limited to the objections to the process, the defects in which were apparent from the face of the record.

But the principal objection to the judgment was the failure of service of process upon the defendants in the original suit, and this vice in the judgment was not only not apparent from the face of the record, but was directly negatived thereby; the judgment sought to be set aside recites that legal process was served upon the defendants in the manner and within the time prescribed by law, whereas those defendants are asserting that the process was defective, was improperly issued, and never served at all. Had the defendants appealed directly or by writ of error, they could have shown none of the facts upon which they chiefly rely, but would have been absolutely precluded by the very record they presented on such appeal. Their only recourse, then, was by direct suit to set aside the judgment complained of. Witt v. Kaufman, 25 Tex. Supp. 385; Elstun v. Scanlan, 202 S. W. 762, and authorities there cited.

[10] To show meritorious defenses to the original suit, appellees, who were defendants in that suit, set up title by limitation, and by purchase from a third person, and their allegations were sufficient as against general demurrer. Appellant contends that the nature of the titles claimed by appellees were inconsistent with and repugnant to each other, but, if that be true, it is immaterial, since it is well settled that a claimant may set up in one suit every character of title available to him.

[11] Appellees Lucio Cuellar and Juan Cuellar Ochoa also alleged that in 1914 they executed a contract with appellant's husband whereby they leased from the latter the land involved, for a period of one year, with the privilege of purchasing the same at the end of that year, if the parties could agree

upon a price. They also allege that they were induced to execute this instrument "by fright and fraud," by which they apparently mean duress, and seek to destroy the effect of that instrument on that account. They attached a copy of this lease to their pleading, pleaded its terms, offered to perform, and seek to require appellant to specifically perform. Of course in doing this they waive their complaint of duress, affirm the contract, and are bound by it for whatever it may be worth to appellant.

[12] The language of this lease contract is quite unusual, but it is in effect a recognition of appellant as a landlord to whom appellees became tenants. The instrument was not executed by Juana Garcia de Cuellar, wife of Lucio, both of whom assert the premises to be their homestead at the time the contract was executed. If this be true, the lease was void for the purpose of divesting this man and his wife of any interest in the premises. Haile v. Haile, 93 S. W. 435; Hennessy v. Savings Co., 22 Tex. Civ. App. 591, 55 S. W. 124.

[13] It was also alleged that at the time this instrument was executed appellees' title by limitation had already fully accrued. If this be true, the execution of this lease contract would not have the effect of destroying or impairing the title of appellees thus previously acquired. Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Haile v. Haile, supra; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 511; Williams v. Galveston, 58 S. W. 551; Hennessy v. Savings Co., supra.

[14] Appellant complains of the action of the trial court in permitting Juana Garcia de Cuellar to intervene in the suit and join the defendants in cause No. 118 in their prayer for injunction and to set aside the judgment rendered in that cause. As has been shown Mrs. Cuellar is the wife of Lucio Cuellar, one of said defendants, and was such at the institution of cause No. 118. She alleges that the premises in question constituted the homestead of her husband and herself. Clearly, then, these facts made it proper to intervene and establish her rights, which were jeopardized by the threatened writ of possession, and which were clouded by the judgment complained of.

The conclusions we have stated require us to overrule all assignments of error, and the judgment must be affirmed.

Affirmed.